**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-2064

CHRISTOPHER DOYLE, LPC, LCPC, individually and on behalf of his clients,

Plaintiff-Appellant,

v.

LAWRENCE J. HOGAN, JR., Governor of the State of Maryland in his official capacity; BRIAN E. FROSH, Attorney General of the State of Maryland in his official capacity,

Defendants-Appellees,

------------------------------

FOUNDATION FOR MORAL LAW,

Amicus Supporting Appellant.

AMERICAN ASSOCIATION FOR MARRIAGE AND FAMILY THERAPY; AMERICAN MEDICAL ASSOCIATION; AMERICAN PSYCHOLOGICAL ASSOCIATION; MARYLAND PSYCHOLOGICAL ASSOCIATION; MARYLAND STATE MEDICAL SOCIETY; NATIONAL ASSOCIATION OF SOCIAL WORKERS; NATIONAL ASSOCIATION OF SOCIAL WORKERS MARYLAND CHAPTER; THE TREVOR PROJECT; FREESTATE JUSTICE, INC.; GLBTQ LEGAL ADVOCATES & DEFENDERS; HUMAN RIGHTS CAMPAIGN; LAMBDA LEGAL DEFENSE AND EDUCATION FUND; NATIONAL CENTER FOR LESBIAN RIGHTS; SURVIVORS OF SEXUAL ORIENTATION CHANGE EFFORTS,

Amici Supporting Appellees.

Appeal from the United States District Court for the District of Maryland at Baltimore. Deborah K. Chasanow, Senior District Judge. (1:19-cv-00190-DKC)

Argued: October 26, 2020                              Decided: June 15, 2021

Before NIEMEYER, MOTZ, and RICHARDSON, Circuit Judges.

Reversed by published opinion. Judge Richardson wrote the opinion, in which Judge Niemeyer and Judge Motz joined.

**ARGUED:** Mathew D. Staver, LIBERTY COUNSEL, Orlando, Florida, for Appellant. Kathleen A. Ellis, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees. **ON BRIEF:** John R. Garza, GARZA LAW FIRM, P.A., Rockville, Maryland; Horatio G. Mihet, Roger K. Gannam, Daniel Schmid, LIBERTY COUNSEL, Orlando, Florida, for Appellant. Brian E. Frosh, Attorney General, Brett E. Felter, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees. John A. Eidsmoe, FOUNDATION FOR MORAL LAW, Montgomery, Alabama, for Amicus Foundation for Moral Law. Sanford Jay Rosen, Benjamin Bien-Kahn, ROSEN BIEN GALVAN & GRUNFELD, San Francisco, California, for Amici Survivors of Sexual Orientation Change Efforts. Shannon P. Minter, Christopher F. Stoll, NATIONAL CENTER FOR LESBIAN RIGHTS, San Francisco, California; Omar Gonzalez-Pagan, LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC., New York, New York; Charlotte Persephone Hoffman, FREESTATE JUSTICE, INC., Baltimore, Maryland, for Amici FreeState Justice, Inc., National Center for Lesbian Rights, Lambda Legal Defense and Education Fund, Inc., GLBTQ Legal Advocates & Defenders, and Human Rights Campaign. Nathalie F.P. Gilfoyle, Deanne M. Ottaviano, AMERICAN PSYCHOLOGICAL ASSOCIATION, Washington, D.C., for Amicus American Psychological Association. Devi M. Rao, Jessica Ring Amunson, Emily L. Chapuis, James T. Dawson, JENNER & BLOCK LLP, Washington, D.C., for Amici American Psychological Association, Maryland Psychological Association, American Medical Association, Maryland State Medical Society, National Association of Social Workers with National Association of Social Workers Maryland Chapter, and American Association for Marriage and Family Therapy. Anne B. Camper, NATIONAL ASSOCIATION OF SOCIAL WORKERS, Washington, D.C., for Amicus National Association of Social Workers. Corey G. Singer, Los Angeles, California, Howard S. Hogan, Stuart D. Delery, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Amicus The Trevor Project.

RICHARDSON, Circuit Judge:

Christopher Doyle, a professional counselor in Maryland, seeks to provide talk therapy to reduce his minor clients' same-sex attractions. But Maryland law allegedly proscribes this practice. *See* Md. Code Ann., Health Occ. § 1-212.1. Doyle claims that in doing so, Maryland has infringed his First Amendment rights by preventing him from engaging in the type of counseling he wants to do. So he sued the Governor and the Attorney General of Maryland.

But Doyle sued the wrong defendants. He argues that he can sue the Governor and the Attorney General under *Ex parte Young*, 209 U.S. 123 (1908), which provides an exception to their immunity from being sued in federal court. But neither the Governor nor the Attorney General have the necessary connection to enforcing § 1-212.1 that permits Doyle's suit against them. So because of Doyle's choice of defendants, we may not consider the interesting First Amendment issues he raises. We therefore reverse the district court's judgment finding that the Governor and the Attorney General lack immunity and vacate the rest of its rulings in this case.

I.    **Background**

A.    **The Act**

In 2018, the Maryland General Assembly passed and the Governor signed into law the Youth Mental Health Protection Act (Senate Bill 1028). The Act prohibits a "mental health or child care practitioner" from "engag[ing] in conversion therapy with an individual

3

who is a minor." Md. Code Ann., Health Occ. § 1-212.1(b).[1]  If practitioners provide such therapy, they have "engaged in unprofessional conduct" and are "subject to discipline" by their "licensing or certifying board."  *Id.* § 1-212.1(c).

## B. Doyle's practice

Doyle is licensed as a professional counselor in Maryland.  He serves as the Executive Director of the Institute for Healthy Families where he provides counseling. About 10 percent of his practice involves treating minors.

As part of his treatment, Doyle engages in talk therapy, where he works to alleviate minors' "unwanted same-sex sexual attractions, behaviors, or identities."  J.A. 12.  He does so by talking "about root causes, about gender roles and identities, and about [his clients'] anxieties and confusion that arise from" their same-sex attractions.  J.A. 33.  Doyle "does not begin counseling with any predetermined goals," relying on his clients to "identify and set" the therapy objectives.  J.A. 34.  Thus, if an individual does not want to reduce their

_____

[1] A "mental health or child care practitioner" is a "practitioner licensed or certified under" several titles of the Maryland Health Occupations article or any "other practitioner licensed or certified under [that] article who is authorized to provide counseling."  MD. CODE ANN., HEALTH OCC. § 1-212.1(a)(3).  No one disputes that Doyle qualifies as a "mental health or child care practitioner" under § 1-212.1.

"Conversion therapy," as it is used in this Maryland law, is defined in the Act:  "a practice or treatment . . . that seeks to change an individual's sexual orientation or gender identity," which includes "any effort to change the behavioral expression of an individual's sexual orientation, change gender expression, or eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same gender."  *Id.* § 1-212.1(a)(2)(i), (ii). It does not include practices that "provide[] acceptance, support, and understanding, or the facilitation of coping, social support, and identity exploration and development, including sexual orientation-neutral interventions to prevent or address unlawful conduct or unsafe sexual practices" nor does it include practices that "do[] not seek to change sexual orientation or gender identity."  *Id.* § 1-212.1(a)(2)(iii).

4

same-sex attractions, Doyle would use talk therapy to help them accept those attractions. But if they did want to reduce those attractions, Doyle would seek to help them do so. J.A. 34; *see also* J.A. 859 (Doyle's Informed Consent and Liability Waiver and Release Form stating that he practices "sexual identity affirming therapy"); J.A. 941 (stating that his "practices [] may have an effect on [his] client's sexual identity, gender identity, attractions, behaviors, etcetera"). But Doyle has several clients who he believes he cannot counsel in the way he would like because of the Act's proscriptions.

## C.     District court proceedings

Doyle sued the Governor of Maryland (Lawrence Hogan) and the Attorney General of Maryland (Brian Frosh) in their official capacities. His complaint contained five counts, including that the Act violated his freedom of speech.

Defendants sought to dismiss the complaint for lack of standing and sovereign immunity. The district court found that Doyle had standing to assert his own claims because he "'experienced a non-speculative and objectively reasonable chilling effect' due to § 1-212.1." *Doyle v. Hogan*, No. DKC 19-0190, 2019 WL 3500924, at *9 (D. Md. Aug. 1, 2019) (quoting *Cooksey v. Futrell*, 721 F.3d 226, 236 (4th Cir. 2013)). The district court also rejected defendants' claimed sovereign immunity based on their connection to the enforcement of the Act. The court explained that § 1-212.1 "does not explicitly prohibit oversight by the Maryland governor and attorney general," and the governor "'supervise[s] and direct[s]'" the executive branch, while the attorney general is the "'legal adviser of . . . the State government.'" *Id.* at *11 (alterations in original) (first quoting Md. Code Ann., State Gov't § 3-302; and then quoting *id.* § 6-106). In a subsequent opinion, the district

5

court dismissed Doyle's claims on the merits and denied Doyle's motion for a preliminary injunction as moot. *Doyle v. Hogan*, 411 F. Supp. 3d 337, 351 (D. Md. 2019). Doyle timely appealed, and we have jurisdiction. *See* 28 U.S.C. § 1291.

## II.    Discussion

Doyle seeks to enjoin the Act's enforcement.[2] In doing so, he raises an interesting First Amendment question that would be a matter of first impression in this Circuit. *See Otto v. City of Boca Raton*, 981 F.3d 854, 859 (11th Cir. 2020) (holding that a ban on conversion therapy was an unconstitutional content-based restriction). But we may not address that question because Doyle cannot sue the Governor and the Attorney General in federal court under these circumstances.

In general, States may not be haled into federal court without their consent. *Va. Off. for Protection & Advocacy v. Stewart*, 563 U.S. 247, 258 (2011); *see also* William Baude, *Sovereign Immunity and the Constitutional Text*, 103 Va. L. Rev. 1 (2017). But suits may, at least sometimes, be brought in federal court to enjoin a state officer from enforcing an unconstitutional act. *Ex parte Young*, 209 U.S. 123, 159–60 (1908).

The "sometimes" qualifier is important. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015). For two requirements must be met to sue a state officer for an injunction.

---

[2] Doyle also seeks damages. But his damages claims are clearly barred. Doyle only sued the Governor and the Attorney General in their official capacities, and "[s]tate officials sued in their official capacities for retrospective money damages have the same sovereign immunity accorded to the State." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 549 (4th Cir. 2014).

First, *Ex parte Young* authorizes suits only against officers with "some connection with the enforcement of the act." 209 U.S. at 157; *accord id*. at 155–56; *Allen v. Cooper*, 895 F.3d 337, 355 (4th Cir. 2018). Without this enforcement duty, the officer is merely "a representative of the State" who cannot be sued because allowing such a suit would essentially "make the State a party." *Ex parte Young*, 209 U.S. at 157. This enforcement duty exists when there is a "'special relation' between the state officer sued and the challenged statute," which provides the officer with the authority to enforce the particular law at issue. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (quoting *Ex parte Young*, 209 U.S. at 157). That authority can come from the "particular act" being challenged, a more general law providing enforcement authority, or "the general duties of the officer." *Ex parte Young*, 209 U.S. at 157–58. That said, we have held that it is not enough that the officer possesses the "[g]*eneral authority* to enforce the laws of the state" broadly if the officer cannot enforce the law at issue. *Waste Mgmt. Holdings*, 252 F.3d at 331 (emphasis added) (quoting *Children's Healthcare Is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996)). Instead, the officer sued must be able to enforce, if he so chooses, the specific law the plaintiff challenges.

Second, the officer with enforcement authority must "threaten and [be] about to commence proceedings." *Ex parte Young*, 209 U.S. at 156. This requirement is "satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (quoting *Waste Mgmt. Holdings*, 252 F.3d at 330).

7

Doyle argues that the Governor and the Attorney General are so connected with the enforcement of the Act that they may be sued under *Ex Parte Young*. He locates this connection in the Governor's general authority over Maryland's Executive Branch and the Attorney General's role as a legal advisor. And Doyle claims that the Governor and the Attorney General could issue a directive that would control his licensing board's authority to bring disciplinary actions. We disagree. The Governor and the Attorney General lack the power to enforce, or direct the enforcement of, the Act. So we find that Doyle cannot sue the Governor and the Attorney General here.

The Act specifically puts disciplinary authority in the hands of "the mental health or child care practitioner's licensing or certifying board." Md. Code Ann., Health Occ. § 1-212.1(c). For Doyle, this is Maryland's State Board of Professional Counselors and Therapists. *Id.* §§ 17-101(e), -509. The Act itself does not provide for another enforcement mechanism. So neither the Governor nor the Attorney General have direct enforcement power under the Act.

Though the Act itself provides no enforcement power to the Governor or the Attorney General, their connection to an Act's enforcement need not come from the Act itself: "[t]he fact that the state officer . . . has some connection with the enforcement of the act is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material." *Ex parte Young*, 209 U.S. at 157. But while we may look beyond the Act itself for this enforcement connection, as noted above, we must still search for more than the "[g]eneral authority to enforce the laws of the state."

*Waste Mgmt. Holdings*, 252 F.3d at 331 (quoting *Children's Healthcare*, 92 F.3d at 1416); *accord Ex parte Young*, 209 U.S. at 157.

To begin, the Governor is immune from suit here. Doyle relies on the Governor's general duty to enforce state laws and general control over Maryland's Executive Branch to provide the requisite "specific connection" to enforcement of the Act. But neither suffices.

First, Doyle cites the Governor's general duty to "take care that the Laws are faithfully executed." Md. Const. art. II, §§ 1, 9. But this was the exact type of general authority that we rejected as insufficient in *Waste Management*, and we again reject it here. 252 F.3d at 331; *accord Ex parte Young*, 209 U.S. at 157.

Second, Doyle suggests the required connection stems from the Governor's supervision and direction of Maryland's Executive Branch, including the Maryland Department of Health. *See* Md. Code Ann., State Gov't § 3-302. But a general "supervisory" role does not permit an individual to sue an officer under *Ex Parte Young*. *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) (quoting *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)). Even so, we could find the required connection if the Governor is able to *direct* Maryland's Secretary of Health to enforce the Act by initiating a disciplinary proceeding. But the Secretary "does not [have] the power to disapprove or modify any decision or determination that" the Board "makes under authority specifically delegated by law to" it. Md. Code Ann., Health Occ. § 1-203(a). So the Secretary cannot make enforcement decisions as he lacks the authority to

9

force the Board to bring a disciplinary action that it otherwise decided not to bring.[3]  And the Governor cannot direct the Secretary to take an action that exceeds the Secretary's power.  So the Governor's power to supervise and direct the Secretary is not sufficient under *Ex parte Young*.

Doyle's claim against the Attorney General fares little better.  Doyle points to various parts of Maryland law to find the requisite special relationship to the enforcement of the Act, noting that the Attorney General must "[g]ive his opinion in writing . . . on any legal matter or subject" when required by the Governor, Md. Const. art. V, § 3(a)(4), and is "the legal adviser of . . . each officer and unit of the State government," Md. Code Ann., State Gov't § 6-106(b).  Yet we have been clear that an "Attorney General's duty to issue advisory opinions is[] . . . 'not sufficient to make [him] the proper part[y] to litigation challenging the law.'" *McBurney*, 616 F.3d at 400 (third and fourth alterations in original) (quoting *Waste Mgmt. Holdings*, 252 F.3d at 331).  Simply advising other departments does not give the Attorney General control over *enforcing* the Act.

Perhaps the closest that the Attorney General comes to having some control over the disciplinary process is that, in some cases, he may "present [a] case on behalf of the Board" at a hearing initiated by the Board.  *See* Md. Code Regs. 10.58.04.05(C)(1).  Even

---

[3] Although the Secretary, along with the Maryland Office of Administrative Hearings, has the power to promulgate regulations to determine whether the Board has engaged in anticompetitive actions, the Secretary does not have general authority to control investigations or charges brought by the Board.  *See* Md. Code Ann., Health Occ. § 1-203(a), (c)(1).  And although the Act also puts the authority to adopt implementing regulations in the hands of the Maryland Department of Health, *see id.* § 1-212.1(e), the ability to adopt implementing regulations is not the same as the ability to enforce the statute.

so, the Board can only "*request* [that] the Office of the Attorney General [] participate in [a] hearing" and is never required to do so. *Id.* (emphasis added); *see also Sheppard v. Riverview Nursing Ctr., Inc.*, 88 F.3d 1332, 1338 (4th Cir. 1996) ("'[M]ay' is a wonderfully permissive word."). So the decision of whether to *commence* a hearing rests with the Board. Md. Code Ann., Health Occ. § 1-602(b)(2) (A subcommittee of the Board determines whether it "should bring charges against a licensee or certificate holder."); *cf.* Md. Code Regs. 10.58.04.02(A)(2) (The Board issues notice of a hearing which includes the charges involved in the proceeding.). The Attorney General's limited authority to represent and do legal work for the Board, with no power to make the decision about whether to bring the action in the first place, does not create the requisite connection to the enforcement of § 1-212.1 to overcome sovereign immunity.

So the Governor and the Attorney General lack a sufficient connection to the Board's disciplinary authority to satisfy *Ex parte Young*. And that dooms the only arguments Doyle made in the district court and on appeal.

With Doyle's appeal resolved, we pause briefly to note that the Attorney General may have the statutory authority to sue for a prospective injunction requiring Doyle to comply with the Act. *See* Md. Code Ann., Health Occ. § 17-513(b)(2), (c)(2) (permitting the Attorney General to bring an action to enjoin conduct that would be "a ground for disciplinary action" by the Board); *but cf.* Oral Arg. at 17:16–17:46, 20:04–21:22 (Defendants arguing that § 17-513 would not authorize the Attorney General to bring such an injunctive action). But Doyle failed in the district court and on appeal to suggest that this authority to seek *prospective* relief provides an adequate connection between the

Attorney General and the enforcement of the Act to permit the suit under *Ex Parte Young*.

So Doyle has waived this undeveloped argument and we do not address it.

*          *          *

Doyle has sued the wrong defendants. Maryland's Governor and Attorney General have no control over the potential enforcement actions that could be brought against him. And while Doyle requests leave to amend his complaint, we leave that question to the district court. So we reverse the district court's decision as to the Governor and Attorney General's immunity from suit in federal court and vacate the remainder of its rulings.

REVERSED