**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 22-2075**

───────────

ANGELA SINGLETON,

Plaintiff - Appellant,

v.

MARYLAND TECHNOLOGY AND DEVELOPMENT CORPORATION,

Defendant - Appellee.

───────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Mark Coulson, Magistrate Judge (1:22-cv-00999-JMC)

───────────

Argued: January 23, 2024                          Decided: June 11, 2024

───────────

Before DIAZ, Chief Judge, and NIEMEYER and RICHARDSON, Circuit Judges.

───────────

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Diaz and Judge Richardson joined.

───────────

**ARGUED:** Thomas James Eiler, ZIPIN, AMSTER & GREENBERG, LLC, Silver Spring, Maryland, for Appellant. Joshua Ryan Chazen, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee. **ON BRIEF:** Philip B. Zipin, ZIPIN, AMSTER & GREENBERG, LLC, Silver Spring, Maryland, for Appellant. Anthony G. Brown, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee.

NIEMEYER, Circuit Judge:

The issue presented in this appeal is whether the Maryland Technology Development Corporation ("TEDCO"), an entity created by the State to promote economic development in Maryland, qualifies as an "arm of the State" such that it is immune under the Eleventh Amendment from suits brought in federal court. Angela Singleton, a former employee of TEDCO, commenced this action against TEDCO for sex- and race-based discrimination and retaliation, but the district court granted TEDCO's motion to dismiss her complaint, concluding that TEDCO was indeed an arm of the State and therefore entitled to Eleventh Amendment immunity.

For the reasons that follow, we affirm.

I

TEDCO is a corporation created by the Maryland General Assembly for the purpose of fostering the growth of new business in Maryland, ultimately for the benefit of its economy and the people of the State. The enabling statute provides that TEDCO "is a body politic and corporate" and that it "is an instrumentality of the State." Md. Code Ann., Econ. Dev. § 10-402(b). In particular, the General Assembly created TEDCO to:

> (1) assist in transferring to the private sector the results and products of scientific research and development conducted by colleges, universities, and federal research institutions in the State;
>
> (2) assist in commercializing those results and products;
>
> (3) assist in commercializing technology developed in the private sector;

2

(4) foster the commercialization of research and development conducted by colleges, universities, and the private sector to create and sustain businesses throughout all regions of the State;

(5) generally assist early-stage and start-up businesses in the State;

(6) invest in Maryland-based technology companies and promote the commercialization and growth of technology companies and jobs in the State;

(7) build a long-term entrepreneurial capacity and sustained venture capital presence in the State;

(8) create pathways to follow-on financing in the State; and

(9) foster inclusive and diverse entrepreneurship and innovation throughout the State, which may include initiatives to raise awareness of programs to assist small, minority, and women-owned businesses through marketing and other efforts.

*Id.* § 10-402(c).  The enabling statute directs TEDCO to fulfill these purposes through the administration of more than a dozen funds and programs created by state law.  They include: (1) the Maryland Technology Incubator Program, *id.* §§ 10-418 to -426; (2) the Maryland Stem Cell Research Fund, *id.* § 10-434; (3) the Coordinating Emerging Nanobiotechnology Research in Maryland Program and Fund, *id.* §§ 10-447 to -448; (4) the Maryland Innovation Initiative Fund, *id.* § 10-457; (5) the Cybersecurity Investment Fund, *id.* § 10-464; (6) the Enterprise Fund, *id.* § 10-469; (7) the Maryland Small Business Innovation Research and Technology Transfer Incentive Program and Matching Fund, *id.* §§ 10-474, 10-477; (8) the Inclusion Fund, *id.* § 10-482; (9) the Pre-Seed Builder Fund, *id.* § 10-486; (10) the Maryland Equity Investment Fund, *id.* § 10-487; (11) the Equitech Growth Fund, *id.* § 10-488; (12) the Cyber Maryland Program and Fund, *id.* § 10-496; (13) the Invest Maryland Program, *id.* § 10-4A-01; (14) the Maryland Small Business

3

Innovation Research Technical Assistance Program, *id.* § 10-4B-01; (15) the Maryland Makerspace Initiative Program and Fund, *id.* §§ 10-4C-02, 10-4C-05; and (16) the Human-Relevant Research Fund and Program, *id.* §§ 10-4D-02 to -03.

To administer these funds, the enabling statute authorizes TEDCO to function much like a private corporation, but with specified restrictions and designated purposes. *See* Md. Code Ann., Econ. Dev. §§ 10-406 to -410. Thus, it can award grants or otherwise invest in qualifying entities that will foster development of businesses in support of each fund's specified mission. Similarly, in addition to the money it receives from the State, its various funds are entitled to receive monetary support from other sources, providing them with additional funds to further their missions. But annually, TEDCO needs and receives appropriations from the State. For fiscal year 2021, for example, the State allocated a total of close to $27 million to TEDCO. And although most of those appropriations were directed for use by the statutorily created funds, approximately $2.3 million was used for TEDCO's operations, including the salaries and wages of its employees.

The Maryland State Treasurer holds each of TEDCO's funds and is directed to invest the money in the funds in the same manner as other state money may be invested. *See, e.g.*, Md. Code Ann., Econ. Dev. §§ 10-434(g)(1), 10-448(f)(1). And subject to a few exceptions, the investment earnings of each fund must be credited back to that fund, each of which was created for a particular state purpose. TEDCO's income "is exempt from State and local taxes." *Id.* § 10-413. While the statute provides that "[a] debt, claim, obligation, or liability" of TEDCO is not the State's, *id.* § 10-411, TEDCO's finances are

4

nonetheless "subject to audit . . . at any time by the State," *id.* § 10-414, and the Maryland State Comptroller must account for TEDCO's funds.

TEDCO is managed by a board of directors consisting of 19 members, 14 of whom are "appointed by the Governor with the advice and consent of the Senate." Md. Code Ann., Econ. Dev. § 10-403(b). Two are appointed by the Senate President, two are appointed by the House Speaker, and one is either the Maryland Secretary of Commerce or the Secretary's designee. *Id.* The Attorney General of Maryland is designated as the legal advisor to TEDCO, and TEDCO may not hire any additional lawyers except with the Attorney General's approval. *See id.* § 10-405. While TEDCO's employees are not considered to be state employees, *see id.* § 10-407(d) (providing that "[t]he officers and employees of the Corporation are not subject to the provisions of Division I of the State Personnel and Pensions Article that govern the State Personnel Management System"), its employees are nonetheless subject to the Public Ethics Law, *id.* § 10-407(c).

Finally, TEDCO is required to file a report with the Governor of Maryland and the Maryland General Assembly every year, which must include "a complete operating and financial statement covering [its] operations"; "a summary of [its] activities during the preceding fiscal year"; and "information on all salaries and any incentives approved by the Board for [TEDCO] employees." Md. Code Ann., Econ. Dev. § 10-415(a).

II

Angela Singleton commenced this action against TEDCO in federal district court, alleging that during eight years of employment with TEDCO, she was subjected to sex-

5

and race-based discrimination and retaliation.  She alleged in five counts (1) a claim for racial discrimination under 42 U.S.C. § 1981; (2) a claim for retaliation under § 1981; (3) a sex- and race-based discrimination claim under the Maryland Fair Employment Practices Act ("MFEPA"); (4) a claim for retaliation under the MFEPA; and (5) a claim for defamation under Maryland law.  For relief, she sought compensatory and punitive damages, as well as attorneys fees.

TEDCO filed a motion to dismiss the action for a lack of jurisdiction, contending that it is a state agency entitled to Eleventh Amendment immunity.  Alternatively, it argued that Singleton's § 1981 and defamation claims should be dismissed for failure to state a claim for which relief can be granted and that the court should decline to exercise supplemental jurisdiction over the remaining MFEPA claims.

In opposing the motion to dismiss on immunity grounds, Singleton argued, among other things, that TEDCO had "failed to prove that it qualifie[d] as an arm of the State" and that it was instead "essential[ly] a series of social impact and venture funds that are overseen by [the] [C]orporation."

In a memorandum opinion dated September 8, 2022, the district court dismissed Singleton's action for a lack of jurisdiction based on Eleventh Amendment immunity.  Considering the four factors identified as relevant to determining whether an entity is entitled to Eleventh Amendment immunity, *see Ram Ditta v. Md. Nat'l Cap. Park & Plan. Comm'n*, 822 F.2d 456, 457–58 (4th Cir. 1987), the court concluded that each weighed in favor of finding that TEDCO was an arm of the State for purposes of Eleventh Amendment immunity.  In particular, while recognizing that Maryland would not be *legally* liable for a

6

judgment against TEDCO, the court concluded that "the State would be *functionally* liable," because the State provides TEDCO's annual operating budget. (Emphasis added). In addition, the court concluded that the "level of control and monitoring" exercised by Maryland over TEDCO also "warrant[ed] arm-of-the-[S]tate status." Accordingly, the court dismissed Singleton's action without prejudice.

Shortly thereafter, Singleton commenced a new civil action in the district court against three employees of TEDCO in their individual capacities and that action remains pending before the district court. Then, from the district court's judgment dismissing this action, Singleton filed this appeal, challenging the court's conclusion that TEDCO is an arm of the State entitled to Eleventh Amendment immunity.

III

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Despite the Amendment's language, the Supreme Court has recognized that the Amendment nonetheless confirms a broader concept of state sovereignty, such that the Eleventh Amendment must be understood to mean that a State is not amenable to the suit of *any* individual in federal court without the State's consent. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). As the Court has explained, "For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing

7

the judicial power of the United States.'" *Id. (*quoting *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). And it is well settled that Eleventh Amendment immunity also "extends to state agencies and other governmental entities that can be viewed as 'arms of the State.'" *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260–61 n.8 (4th Cir. 2005) (cleaned up); *see also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) ("[A] State and its 'arms' are, in effect, immune from suit in federal court").

Entities are considered "arms of the State" if they, based on their particular legal and factual circumstances, "*function*[] as an arm of the State or its alter ego." *S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300, 303 (4th Cir. 2008) (emphasis added). Such immunity is afforded because, when a governmental entity that qualifies as an arm of the State has been sued, the relationship between the two is such that "the State is the real, substantial party in interest," and the entity is its alter ego. *Ram Ditta*, 822 F.2d at 457 (cleaned up); *see also Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 542 (4th Cir. 2014). But counties, municipalities, and other similar political subdivisions are not protected by the Eleventh Amendment as arms of the State, even though they "exercise a slice of state power." *Lake Country Estates, Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 401 (1979) (cleaned up).

To determine whether an entity is an arm of the State, we have articulated a "nonexclusive list" of four factors to be considered:

> (1) Whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State;

8

(2) The degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions;

(3) Whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and

(4) How the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make [it] an arm of the State.

*S.C. Dep't of Disabilities*, 535 F.3d at 303 (cleaned up and spaced for clarity). But the "most important consideration," as we have repeatedly emphasized, is the first — *i.e.*, "whether the state treasury will be responsible for paying any judgment that might be awarded." *Hutto*, 773 F.3d at 543 (quoting *Ram Ditta*, 822 F.2d at 457). Yet, even when "the judgment will not be paid from the State treasury," sovereign immunity may nonetheless apply where the "governmental entity is so connected to the State that the legal action against the entity would . . . amount to the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties," as determined by consideration of the remaining three factors. *Id.* (quoting *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001)).

In this case, Singleton contends that the district court erred in determining that the State of Maryland would be "functionally liable" for a judgment against TEDCO because this conclusion overlooks the "vast reserves of substantial moneys" that TEDCO has available "to pay any judgment levied against it," emphasizing in particular money held in the Enterprise Fund and the Reserve Fund. She also contends that, contrary to the district court's conclusion, "TEDCO is an autonomous entity" that is "given great leeway" to

9

"manage and administer a series of funds with specific statutory purposes." More specifically, she asserts that

> [t]he control which TEDCO possesses by statute over its own revenue, the ability of TEDCO to procure revenue from other sources and generate it from its own investments, the discretionary use of money appropriated into the various funds, and the ability to use money in the Reserve and Enterprise Funds for its own purposes and reasons indicate that TEDCO, not the State of Maryland, controls its own revenue and indicates autonomy from the State.

Finally, while she acknowledges that the enabling legislation provides that TEDCO is "an instrumentality of the State," she argues that that label alone is not dispositive and that state law overall treats TEDCO as an independent, "quasi-governmental" agency. Accordingly, she maintains that TEDCO is not immune from suit in federal court under the Eleventh Amendment.

In response, TEDCO contends that it is indeed an arm of the State. While it concedes that "an obligation or liability of TEDCO is not an obligation or liability of the State," as provided by the enabling statute, it insists that Maryland nonetheless "maintains *functional* liability over the liabilities of TEDCO because it provides funding to TEDCO through the State's annual budget." (Emphasis added). It thus argues that "any judgment that depletes funds provided by the State for a particular state purpose infringes directly on [the State's] sovereign interests, further implicating the Eleventh Amendment." TEDCO also points to the State's control over it, asserting that "the State retain[s] control and ownership over [its] operations"; that TEDCO indisputably "handles statewide concerns"; and that Maryland "treats [it] like a state agency."

10

In addressing the immunity issue, we begin with the most important factor —
whether the State "could be responsible for the payment of a judgment against" the entity.
*Hutto*, 773 F.3d at 543. While TEDCO's enabling statute does provide that the State will
not be legally liable to pay a judgment against TEDCO, *see* Md. Code Ann., Econ. Dev.
§ 10-411 (providing that "[a] debt, claim, obligation, or liability of the Corporation or any
subsidiary is not: (1) a debt, claim, obligation, or liability of the State, a unit or
instrumentality of the State, or of a State officer or State employee; or (2) a pledge of the
credit of the State"), that does not fully address this factor. As already noted, an entity
"may also constitute an arm of the state where the state is *functionally* liable, even if not
*legally* liable." *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency* ("*Oberg II*"),
745 F.3d 131, 137 (4th Cir. 2014) (latter emphasis added) (cleaned up). In addressing this,
"courts must consider *the practical effect* of a putative . . . judgment on the state treasury."
*Hutto*, 773 F.3d at 543–44 (cleaned up) (quoting *Ristow v. S.C. Ports Auth.*, 58 F.3d 1051,
1053 (4th Cir. 1995)); *see also U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*
(*"Oberg III"*), 804 F.3d 646, 658 (4th Cir. 2015) ("The functional-liability analysis looks
to whether, as a practical matter, a judgment against a state-created entity puts state funds
at risk, despite the fact that the state is not legally liable for the judgment"). Thus, "[w]here
an agency is so structured that, as a practical matter, if the agency is to survive, a judgment
must expend itself against state treasuries, common sense and the rationale of the eleventh
amendment require that sovereign immunity attach to the agency." *Hess v. Port Auth.
Trans-Hudson Corp.*, 513 U.S. 30, 50 (1994) (citation omitted).

11

Turning to TEDCO's circumstances, we agree with the district court that, although not directly legally liable for a judgment against TEDCO, the State of Maryland would *functionally* be liable for such a judgment. Central to this conclusion is TEDCO's financial dependence on the State of Maryland. To survive as a viable entity, TEDCO must have the money that it receives from the State on a yearly basis to pay its expenses and fund its operations. In other words, TEDCO is not "self-sustaining." *Hess*, 513 U.S. at 50. While TEDCO is certainly authorized to receive and does receive money from non-state sources and while it also receives a return on its investments and from its operations, its annual expenditures in the form of economic development grants and other assistance to new companies outpace its annual revenue from such non-state sources. Thus, its continued existence and ability to fulfill its State-mandated mission depends on the State continually refilling TEDCO's coffers through annual appropriations. And the State does in fact continually refill TEDCO's coffers. In these circumstances, we do not have to theorize as to what would happen "[i]f the expenditures of the enterprise exceed receipts." *Hess*, 513 U.S. at 51. That is a fiscal reality. Therefore, while Maryland is not legally obligated to pay TEDCO's debts, it is practically responsible for the entity's solvency.

TEDCO's financial circumstances thus stand in sharp contrast with both the bistate railway that the Supreme Court considered in *Hess* and the profitable State-created student loan entity that we considered in *Oberg*. In *Hess*, the Supreme Court repeatedly stressed the Port Authority's "financial independence" in the course of holding that it was not entitled to Eleventh Amendment immunity, explaining that the fact that the entity was "financially self-sufficient" meant that the States that created it would not, "as a practical

12

matter," become responsible for paying a judgment against it. 513 U.S. at 49–52; *see also id.* at 45 (emphasizing that "the States lack financial responsibility for the Port Authority," as it "generates its own revenues, and for decades has received no money from the States" and that this "[p]oint[ed] away from Eleventh Amendment immunity"); *id.* at 49 (explaining that "[t]he Port Authority's anticipated and actual financial independence — its long history of paying its own way — contrasts with the situation of transit facilities that place heavy fiscal tolls on their founding States" and had, on that basis, been found to share in the State's sovereign immunity (citation omitted)). Similarly, in *Oberg*, when finding that the entity at issue was not an arm of the State, we emphasized that it had "extensive commercial operations" that had made it "financially independent of the Commonwealth" and that it had "received no appropriations to support its operations since 1988." *Oberg III*, 804 F.3d at 655 (cleaned up); *see also id.* at 657–68.

Singleton nonetheless points out that TEDCO's funds are held in segregated accounts apart from general state funds, which we have previously recognized to be a consideration "counsel[ing] against establishing arm-of-the-state status." *Oberg II*, 745 F.3d at 138–39. Singleton also argues that TEDCO's control of the Enterprise Fund, which was projected to end the 2023 fiscal year with approximately $2.5 million, would allow it to use this excess to "pay [its] administrative, *legal*, and actuarial expenses," including a judgment against it. Md. Code Ann., Econ. Dev. § 10-469(b)(6) (emphasis added). She notes similarly that "[p]er the FY 2023 Budget, TEDCO has approximately $22 [million] in its Reserve Fund, including non-cash assets," and she thus argues that "[t]he undeniable existence of these substantial moneys combined with the ability of

13

TEDCO to use these moneys to pay a judgment levied against it indicates that the state treasury will not be affected."

We, however, find that these arguments do not withstand closer scrutiny. To begin, it is far from clear that TEDCO could use either the Enterprise Fund or the Reserve Fund to pay judgments against it. For example, the statutory authorization that allows TEDCO to use the Enterprise Fund to pay "*legal expenses*" does not necessarily mean that TEDCO could use that fund to satisfy a judgment against it. Similarly, much of the money in the Reserve Fund is restricted to certain programs and their missions and thus would not be available to pay a judgment against TEDCO. But more importantly, even if TEDCO were to pay a judgment from these funds, its overarching financial relationship with the State and the State's mission would be undermined, and payment of a judgment thus would end up "interfer[ing] with the State's fiscal autonomy." *Md. Stadium Auth.*, 407 F.3d at 264 (cleaned up); *see also id.* at 263 (recognizing that "the crucial question is whether use of . . . unappropriated funds to pay a damage award would interfere with the fiscal autonomy and political sovereignty of the State" (cleaned up)). Thus, in all likelihood, (1) Maryland funds would end up funding all or part of a judgment entered against TEDCO or (2) TEDCO's payment of the judgment from moneys in its funds would adversely affect the State's mission.

We therefore conclude that a judgment against TEDCO would implicate Maryland's treasury, strongly indicating that TEDCO is an arm of the State for purposes of Eleventh Amendment immunity.

14

Moreover, this conclusion is well reinforced by consideration of the other factors for determining whether an entity is an arm of the State, all of which focus on protecting the dignity of the State as sovereign. As we have explained, even where a "State treasury will not be liable for a judgment, sovereign immunity [nonetheless] applies . . . where the government entity is so connected to the State that the legal action against the entity would . . . amount to the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Hutto*, 773 F.3d at 543 (cleaned up). And this can be determined by considering the remaining three factors — "(1) the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys; (2) the scope of the . . . concerns — whether local or statewide — with which the entity is involved; and (3) the manner in which State law treats the entity." *Id.* at 546 (quoting *Cash*, 242 F.3d at 224).

First, the degree of control that the State of Maryland has over TEDCO strongly indicates that TEDCO is an arm of the State. The annual appropriations process in the General Assembly demonstrates that, in consultation with the Executive Branch, the General Assembly makes judgments during the budgetary process about the level of funding that should be allocated to each of the various funds that TEDCO administers in furtherance of the State's mission. Thus, through the power of the purse, the State plays an active role in determining TEDCO's direction and priorities for the coming year, ensuring that TEDCO's operations reflect the General Assembly's changing legislative priorities. And while TEDCO exercises considerable discretion in managing the funds, it nonetheless must do so in furtherance of the priorities determined by the State. Moreover,

15

the State exercises overall control over TEDCO's discretion by requiring TEDCO each year to provide both the Governor and the General Assembly with "a complete operating and financial statement covering [its] operations" and "a summary of [its] activities." Md. Code Ann., Econ. Dev. § 10-415(a)(2). And in providing that statement, TEDCO goes to great lengths to demonstrate that it is functioning to further the State's mission.

In addition, the State's control over TEDCO is manifested structurally. The State Treasurer holds each of the TEDCO funds and must invest that money "in the same manner as other State money." Md. Code Ann., Econ. Dev. §§ 10-434(d)(2); 10-448(b)(2), (f); 10-457(f); 10-464(f); 10-469(d)(2), (f); 10-477(d)(2), (g); 10-482(d)(2), (g); 10-486(e)(2), (g); 10-487(e)(2); 10-488(b)(4)(ii); 10-496(e)(5)(ii); 10-4C-05(b)(2), (g); 10-4D-02(d)(2), (g). The State Comptroller is required to account for TEDCO's funds. *Id.* The Board of Directors is appointed by the State. *Id.* § 10-403(a), (b). The State Attorney General is designated by the State to be TEDCO's "legal advisor." *Id.* § 10-405(a). The State may conduct an audit of TEDCO "at any time." *Id.* § 10-414. TEDCO's employees are subject to the State's Public Ethics Law. *Id.* § 10-407(c). And, as noted, TEDCO is required annually to report to the State — the Governor and the General Assembly. *Id.* § 10-415(a).

Second, as to the factor of whether the scope of the entity's concerns are local or statewide, it is undisputed that TEDCO's concerns are statewide. This is reflected in the provisions for the creation of TEDCO's Board, which state that the Governor must consider whether board members represent "all geographic regions of the State." Md. Code Ann., Econ. Dev. § 10-403(e)(2).

16

Finally, as to the factor of how state law treats the entity, we find telling both the manner in which the State engages in its appropriation process and the control it exercises over the funding and structure of TEDCO.  While the State authorizes TEDCO latitude in how it carries out the State's mission, in exercising ultimate control of all decisions and finances, it treats TEDCO substantially as an agency.

At bottom, we conclude that TEDCO is an arm of the State of Maryland and therefore that it is protected from Singleton's suit by the Eleventh Amendment. Accordingly, we affirm the district court's order dismissing the complaint on that ground.

AFFIRMED

17